

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL KLARE, | ) | Case No. CV 23-6386 FMO (AGRx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| WESTLAKE SERVICES, LLC, | ) | |
| Defendant. | ) | |

Having reviewed and considered all the briefing filed with respect to plaintiff's Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. 82, "Motion"), and the oral argument presented at the hearing on October 2, 2025, the court concludes as follows.

## BACKGROUND

On June 20, 2023, Michael Klare ("Klare" or "plaintiff"), filed this putative class action in state court against Westlake Services, LLC d/b/a Westlake Financial Services ("defendant" or "Westlake"), asserting claims for:  (1) breach of contract; (2) violation of California's Rosenthal Fair Debt Collection Practices Act, Cal Civ. Code § 1788, et seq.; and (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.  (See Dkt. 1, Notice of Removal ("NOR") at ¶¶ 1-2); (Dkt. 1-2, Complaint at ¶¶ 56-82).  On August 4, 2023, Westlake removed the action to this court pursuant to the Class Action Fairness Act.  (See Dkt. 1, NOR at ¶¶ 7-21).

Plaintiff alleges that defendant, "a servicer of auto loans," "violates state debt-collection law and breaches the uniform terms of borrowers' loan agreements by charging and collecting illegal

processing fees when borrowers pay their monthly loan payments, ('Pay-to-Pay Fees')." (Dkt. 1-2, Complaint at ¶ 11). Plaintiff alleges that "Defendant charges borrowers fees of $5.00 for payment processing[,]" (id.), even though "[t]he actual cost to Defendant is far less than the amount it charges borrowers" and it is already "compensated out of the interest paid on each borrower's monthly payment[.]" (Id. at ¶ 14). According to plaintiff, "[e]ven if some fee were allowed, the contract and state law only allow Defendant to pass along the actual cost of fees incurred by it to the borrower – here only a few cents per transaction." (Id. at ¶ 15).

Defendant filed its Answer on August 25, 2023. (See Dkt. 20, Answer). On March 13, 2024, the parties participated in a mediation. (See Dkt. 75-1, [Initial] Motion for Preliminary Approval ("Initial Motion") at 3). Plaintiff filed a motion for class certification, (Dkt. 49), but before the court could rule on the motion, plaintiff filed a Notice of Settlement. (See Dkt. 67, Notice of Settlement). The court denied plaintiff's initial motion for preliminary approval on July 3, 2025. (See Dkt. 79, Court's Order of July 3, 2025). The parties subsequently executed an Amended Class Settlement and Release Agreement (Dkt 82-2, Exh. 1, Agreement) and on August 18, 2025, plaintiff filed the instant Motion. (See Dkt. 82, Motion).

The settlement class is defined as "all natural persons with a retail installment contract assigned to Westlake who, between June 20, 2022, and the date of Plaintiff's forthcoming motion for preliminary approval, paid a convenience fee to ACI Payments, Inc. [("ACI")], in connection with a payment the person was making on a Westlake account, where the payment was made either on the due date of the payment, after the due date of the payment, or where the due date is unknown, based on Westlake's records." (Dkt. 82-2, Exh. 1, Agreement at ¶ 4.1). Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $1.2 million, (see Dkt. 82-2, Exh. 1, Agreement at ¶¶ 3.32, 5.1, 5.3, 5.5), which will be used to pay the class members, the class representative's service award, the settlement administrator, and attorney's fees and costs. (See id. at ¶¶ 3.22, 3.32); (Dkt. 82-1, Memorandum of Points & Authorities ("Memo") at 5). The settlement provides for up to 25% of the gross settlement amount in attorney's fees ($300,000); and an incentive payment of $10,000 for plaintiff. (See Dkt. 82-2, Exh. 1, Agreement at ¶¶ 6.6, 6.7). The proposed settlement administrator, Simpluris, will be paid no

1   more than $45,000.  (<u>Id.</u> at ¶ 3.29); (Dkt. 82-1, Memo at 7).  According to plaintiff, the net

2   settlement amount is expected to be approximately $808,500. (Dkt.82-1, Memo at 5); (Dkt. 82-2,

3   Exh. 1, Agreement at ¶ 3.22).

4          Class members that submit valid claim forms will receive a payment from the net settlement

5   fund based on a per capita, per-account basis.  (<u>See</u> Dkt. 82-2, Exh. 1, Agreement at ¶ 6.1).  The

6   amount paid to class members will depend on the number of valid submitted claim forms.  (<u>See</u>

7   Dkt. 82-1, Memo at 6).  Claimants can elect to receive a credit to their Westlake account, a direct

8   deposit, or a digital disbursement option, such as PayPal, Venmo, or Zelle.  (<u>See</u> Dkt. 82-2, Exh.

9   1, Agreement at ¶¶ 6.2, 6.3 & 10.1).  Any funds remaining after a secondary distribution shall be

10  donated to the proposed cy pres recipient – the Center for Consumer Law & Economic Justice at

11  UC Berkeley Law School.[1]  (<u>See id.</u> at ¶¶ 5.5 & 6.4)

12         In his Motion, plaintiff seeks an order:  (1) preliminarily approving the proposed settlement;

13  (2) conditionally certifying the proposed settlement class; (3) appointing Klare as class

14  representative; (4) appointing Bailey & Glasser, LLP and Bibiyan Law Group, P.C., as class

15  counsel; (5) appointing Simpluris as the settlement administrator; (6) approving and ordering

16  dissemination of the proposed class notice program; and (7) scheduling a final approval hearing.

17  (<u>See</u> Dkt. 82-1, Memo at 3).

18                                    **<u>LEGAL STANDARDS</u>**

19  I.    CLASS CERTIFICATION.

20         At the preliminary approval stage, the court "may make either a preliminary determination

21  that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

22  as to the appropriateness of class certification."[2]  <u>Smith v. Wm. Wrigley Jr. Co.</u>, 2010 WL 2401149,

23  _____

24         [1]    The Center for Consumer Law & Economic Justice "is a research, advocacy, policy, and
25  teaching organization focused on consumer protection.  Its mission is directly related to benefitting
    and serving both the interests of consumers like Class Members here and the objectives of the
26  consumer protection statutes at issue in this case."  (Dkt. 82-1, Memo at 6-7); (<u>see also</u> Dkt 83,
    Defendant's Joinder in Support of Plaintiff's Renewed Motion at 2-4) (setting forth the center's
27  qualification as a cy pres in this action).

28         [2]   All "Rule" references are to the Federal Rules of Civil Procedure.

1   *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

2   2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

3   117 S.Ct. 2231, 2248 (1997) ("Parties seeking class certification for settlement purposes must

4   satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  In the settlement context, a

5   court must pay "undiluted, even heightened, attention" to the class certification requirements.

6   Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; accord In re Volkswagen "Clean Diesel" Mktg.,

7   Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018).  "Such attention is of vital

8   importance, for a court asked to certify a settlement class will lack the opportunity, present when

9   a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521

10  U.S. at 620, 117 S.Ct. at 2248.

11        A party seeking class certification must first demonstrate that: "(1) the class is so numerous

12  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

13  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

14  of the class; and (4) the representative parties will fairly and adequately protect the interests of the

15  class." Fed. R. Civ. P. 23(a)(1)-(4).  Courts refer to these requirements by the following shorthand:

16  "numerosity, commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda

17  Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean

18  Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc).

19  In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one

20  of the three requirements listed in Rule 23(b).[3] See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338,

21  _____

22        [3]   Rule 23(b) is satisfied if:

23        (1) prosecuting separate actions by or against individual class members would
             create a risk of:

24             (A) inconsistent or varying adjudications with respect to individual class

25             members that would establish incompatible standards of conduct for the
               party opposing the class; or

26             (B) adjudications with respect to individual class members that, as a practical
               matter, would be dispositive of the interests of the other members not parties

27             to the individual adjudications or would substantially impair or impede their
               ability to protect their interests;

28        (2) the party opposing the class has acted or refused to act on grounds that apply

1  345, 131 S.Ct. 2541, 2548 (2011).

2      "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that

3  the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.

4  Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted); see Dukes, 564 U.S. at 345,

5  131 S.Ct. at 2548.  A plaintiff "must prove the facts necessary to carry the burden of establishing

6  that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  Olean

7  Wholesale, 31 F.4th at 665.  However, Rule 23(b)(3) issues regarding manageability are "not a

8  concern in certifying a settlement class where, by definition, there will be no trial."  In re Hyundai

9  and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

10 II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

11     Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

12 proposed to be certified for purposes of settlement – may be settled . . . only with the court's

13 approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e]

14 class members, including the named plaintiffs, whose rights may not have been given due regard

15 by the negotiating parties."  Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of San

16 Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is

17 "committed to the sound discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d

18 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

19 _____

20     generally to the class, so that final injunctive relief or corresponding declaratory relief
       is appropriate respecting the class as a whole; or
21     (3) the court finds that the questions of law or fact common to class members
       predominate over any questions affecting only individual members, and that a class
22     action is superior to other available methods for fairly and efficiently adjudicating the
       controversy.  The matters pertinent to these findings include:
23
           (A) the class members' interests in individually controlling the prosecution or
24         defense of separate actions;
           (B) the extent and nature of any litigation concerning the controversy already
25         begun by or against class members;
           (C) the desirability or undesirability of concentrating the litigation of the claims
26         in the particular forum; and
           (D) the likely difficulties in managing a class action.
27

28 Fed. R. Civ. P. 23(b)(1)-(3).

1    Approval of a class action settlement requires a two-step process – preliminary approval

2  and the dissemination of notice to the class, followed by a later final approval.  See Spann v. J.C.

3  Penney Corp. ("Spann II"), 314 F.R.D. 312, 319 (C.D. Cal. 2016).  "[T]he showing at the

4  preliminary approval stage – given the amount of time, money, and resources involved in, for

5  example, sending out . . . class notice[] – should be good enough for final approval."  Id.; see also

6  4 Newberg on Class Actions § 13:10 (6th ed. 2022) ("[S]ending notice to the class costs money

7  and triggers the need for class members to consider the settlement, actions which are wasteful

8  if the proposed settlement [is] obviously deficient from the outset.").  The court may grant

9  preliminary approval and direct notice in a reasonable manner to all class members who would

10  be bound by the settlement if the parties provide sufficient information to show that the court will

11  likely be able to:  (1) "approve the proposal under Rule 23(e)(2);" and (2) "certify the class for

12  purposes of judgment on the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC

13  Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval

14  was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing

15  that the court will likely be able to approve the proposed settlement under the final-approval

16  standard contained in Rule 23(e)(2).") (internal quotation marks omitted); Newberg, § 13:10 ("In

17  2018, Congress codified this approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds

18  for the initial decision to send notice of a proposed settlement to the class[.]").

19    "At this stage, the court may grant preliminary approval of a settlement and direct notice

20  to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive

21  negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment

22  to class representatives or segments of the class; and (4) falls within the range of possible

23  approval."  Spann II, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v.

24  Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv.

25  Comm. Notes to Rule 23(e)(1) Amendments (The types of information that should be provided to

26  the court in deciding whether to send notice – i.e., that it will likely approve the settlement under

27  Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the

28  particular class action and proposed settlement."  "[G]eneral observations" as to the types of

information that should be provided include, but are not limited to, the following: (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "[t]he proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

## DISCUSSION

I.    CLASS CERTIFICATION.

    A.    <u>Rule 23(a) Requirements</u>.

        1.    **Numerosity**.

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole determining factor, . . . where a class is large in numbers, joinder will usually be impracticable." <u>A.B. v. Hawaii State Dep't of Educ.</u>, 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks omitted).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  <u>Slaven v. BP Am., Inc.</u>, 190 F.R.D. 649, 654 (C.D. Cal. 2000); <u>accord</u> <u>Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 473 (C.D. Cal. 2012).

Here, the class is so numerous that joinder is impracticable.  The settlement class includes approximately 278,151 individuals who are connected to 235,008 accounts, (<u>see</u> Dkt. 82-1, Memo at 19), which easily exceeds the threshold for numerosity.

        2.    **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  Proof of commonality under Rule 23(a) is "less rigorous" than the related predominance standard under Rule 23(b)(3).  <u>See</u> <u>Hanlon v. Chrysler Corp.</u>, 150

F.3d 1011, 1019 (9th Cir. 1998), <u>overruled on other grounds by</u> <u>DZ Reserve v. Meta Platforms, Inc.</u>, 96 F.4th 1223, 1238 (9th Cir. 2024); <u>Mazza</u>, 666 F.3d at 589 (same).  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350, 131 S.Ct. at 2551; <u>see</u> <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." <u>Mazza</u>, 666 F.3d at 588 (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." <u>Abdullah v.  U.S. Sec. Assocs., Inc.</u>, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); <u>see</u> <u>Mazza</u>, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon</u>, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of the litigation.  The primary class-wide question here involves whether defendant's "common practice of charging and collecting [f]ees from consumers when they make payments . . . using ACI" violates California law.  (Dkt. 82-1, Memo at 19); (<u>see</u> Dkt. 1-2, Complaint at ¶¶ 11, 61-82).  Under the circumstances, plaintiff has satisfied the commonality requirement.  <u>See</u>, <u>e.g.</u>, <u>Torliatt v. Ocwen Loan Servicing, LLC</u>, 570 F.Supp.3d 781, 794 (N.D. Cal. 2021) (allegations regarding pay-to-pay fees charged by defendant satisfied commonality requirement); <u>Silveira v. M&T Bank</u>, 2021 WL 2403157, *3 (C.D. Cal. 2021) (finding commonality satisfied where complaint alleged defendant's uniform policy of charging class members"charged Pay-to-Pay Fees" violated California law).

1              3.     **Typicality**.

2         "Typicality refers to the nature of the claim or defense of the class representative, and not

3  to the specific facts from which it arose or the relief sought." <u>Ellis v. Costco Wholesale Corp.</u>, 657

4  F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).  To demonstrate typicality, the

5  class representative's claims must be "reasonably co-extensive with those of absent class

6  members[,]" although "they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020; <u>see</u>

7  <u>Ellis</u>, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the

8  class.").  "The test of typicality is whether other members have the same or similar injury, whether

9  the action is based on conduct which is not unique to the named plaintiffs, and whether other class

10  members have been injured by the same course of conduct." <u>Ellis</u>, 657 F.3d at 984 (internal

11  quotation marks omitted).

12         Here, plaintiff's claims arise from the same nucleus of facts as those of the absent class

13  members.  Plaintiff and the class members – who all assert the same legal theory – had contracts

14  with Westlake and paid an extra fee as part of their payments to Westlake via the ACI portal.  (See

15  Dkt. 82-1, Memo at 20); (Dkt. 1-2, Complaint at ¶ 52); <u>see</u>, <u>e.g.</u>, <u>Brown v. NFL Players Ass'n.</u>, 281

16  F.R.D. 437, 442 (C.D. Cal. 2012) (finding typicality requirement satisfied where the plaintiff's

17  claims were based on "the same event or practice or course of conduct that g[ave] rise to the

18  claims of other class members and . . . are based on the same legal theory") (internal quotation

19  marks omitted); <u>Spann v. J.C. Penney Corp.</u> ("<u>Spann I</u>"), 307 F.R.D. 508, 519 (C.D. Cal. 2015),

20  <u>modified</u>, 314 F.R.D. 312 (C.D. Cal. 2016) ("[P]laintiff's claims are based on the same facts and

21  the same legal and remedial theories as the claims of the rest of the class members.").

22  Additionally, the court is not aware of any facts that would subject plaintiff "to unique defenses

23  which threaten to become the focus of the litigation." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497,

24  508 (9th Cir. 1992) (internal quotation marks omitted).  In short, plaintiff has satisfied the typicality

25  requirement.

26              4.     **Adequacy of Representation**.

27         "The named Plaintiffs must fairly and adequately protect the interests of the class." <u>Ellis</u>,

28  657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will

adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

Here, the proposed class representative, Klare, has no individual claims separate from the class claims, (see, generally, Dkt. 1-2, Complaint), and does not appear to have any conflicts of interest with the absent class members.  (See Dkt. 82-1, Memo at 21); (Dkt. 82-3, Declaration of Michael L. Klare ("Klare Decl.") at ¶ 4); (Dkt. 82-2, Declaration of Jonathan Marshal in Support of Motion ("Marshall Decl.") at ¶ 30); see, e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class.").  Thus, "[t]he adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests as the absent Class Members[.]"  See Barbosa, 297 F.R.D. at 442.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class counsel."  Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20.  Having reviewed the declaration filed by proposed class counsel, (see Dkt. 82-2, Marshall Decl. at ¶¶ 3-14, 30), the court is persuaded that there are no issues as to the adequacy of representation.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.    Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  The rule requires two different inquiries, specifically a determination as to whether:  (1) "questions of law or fact common to class members predominate over any

questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Spann II, 314 F.R.D. at 322-23 (same).

1.    **Predominance**.

"[T]he general rule [is] that predominance is easier to satisfy in the settlement context." Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020).  "To determine whether a class satisfies the [predominance] requirement, a court pragmatically compares the quality and import of common questions to that of individual questions."  Id. at 1005.  "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."  Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see also Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  "If a common question will drive the resolution [of the litigation], even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation."  Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah, 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (internal quotation marks omitted) (brackets in original).  Finally, the class damages must be sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

For the reasons discussed above, see supra at § I.A.2., the court is persuaded that common questions predominate over individual questions. See, e.g., Silveira, 2021 WL 2403157, at *4 (finding predominance requirement satisfied in a pay-to-pay class action); see also Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some

individual class members.") (internal quotation marks omitted).  Finally, the relief sought applies
to all class members and is traceable to plaintiff's liability case.  See Comcast, 569 U.S. at 35, 133
S.Ct. at 1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential
legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

                    2.    **Superiority**.

        "The superiority inquiry under Rule 23(b)(3) requires determination of whether the
objectives of the particular class action procedure will be achieved in the particular case" and
"necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."
Hanlon, 150 F.3d at 1023 (internal citation omitted).  Rule 23(b)(3) provides a list of four non-
exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

        The first factor considers "the class members' interests in individually controlling the
prosecution or defense of separate actions[.]"  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs
against class certification where each class member has suffered sizeable damages or has an
emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, Klare does not assert any
claims for emotional distress, nor is there any indication that the amount of damages any individual
class member could recover is significant or substantially greater than the potential recovery of
any other class member.  (See, generally, Dkt. 1-2, Complaint).  The alternative method of
resolution – pursuing individual claims for a relatively modest amount of damages – would likely
never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023;
see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of
the putative class members' potential individual monetary recovery, class certification may be the
only feasible means for them to adjudicate their claims.  Thus, class certification is also the
superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D.
Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the
superior, but the only manner in which to ensure fair and efficient adjudication of the present
action.").  In short, "there is no evidence that [c]lass members have any interest in controlling
prosecution of their claims separately nor would they likely have the resources to do so."  Munoz
v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation."  Newberg, § 4:70 (emphasis omitted).  Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case.  (See, generally, Dkt. 82-1, Memo at 21-22); see Barbosa, 297 F.R.D. at 444 ("The Court does not have any information that litigation concerning this controversy is currently being pursued by or against the class members; thus, this factor is neutral.").

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class action."  See Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant."  Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes.  In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial.  However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The only factors in play here weigh in favor of class treatment.  Further, the filing of separate suits by over 200,000 class members, (see Dkt. 82-1, Memo at 19), "would create an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

II.     FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

A.     The Settlement is the Product of Arm's-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

1  negotiated at arm's length.  Here, the settlement negotiations were initially supervised by a

2  mediator and were conducted at arm's length.  (See Dkt. 82-2, Marshall Decl. at ¶¶ 17, 19).

3  Settlement was reached "after extensive factual investigation, motion[] practice (including . . . the

4  filing of Plaintiff's motion for class certification and Westlake's opposition thereto),[and]

5  discovery[.]"  (Dkt. 82-1, Memo at 11).

6          Based on the record before the court, the court is persuaded that the parties thoroughly

7  investigated and considered their own and the opposing party's positions.  The parties had a

8  sound basis for measuring the terms of the settlement against the risks of continued litigation, and

9  there is no evidence that the settlement is the product of fraud or overreaching by, or collusion

10 between, the negotiating parties.  See, e.g., Spann II, 314 F.R.D. at 323-25 (finding no evidence

11 that a class action settlement was the product of fraud or collusion between the parties);

12 Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class

13 action settlement where there was "no evidence of fraud, overreaching, or collusion").

14         B.      The Amount Offered in Settlement Falls Within a Range of Possible Judicial

15                 Approval and is a Fair and Reasonable Outcome for Class Members.

16                 1.      **Recovery for Class Members.**

17         As noted above, class members will share in a non-reversionary gross settlement amount

18 of $1.2 million.  (See Dkt. 82-2, Exh. 1, Agreement at ¶¶ 3.32, 5.1, 5.3, 5.5).  According to plaintiff,

19 the gross settlement amount is fair because the "maximum statutory damages award on the class

20 claims at issue is $500,000[,]" and plaintiff's "expert witness calculated that after removing

21 accounts allegedly subject to arbitration, the sum of all [f]ees is about $3.1 million."  (See Dkt. 82-

22 1, Memo at 15).  As such, the $1.2 million settlement fund represents approximately 33% of the

23 potential class recovery.  (Id.).  Plaintiff adds that the settlement is fair given defendant's position

24 that 99% of the class members are subject to arbitration agreements.  (See id. at 16).

25         Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and

26 adequate, particularly when viewed in light of the litigation risks and the costs, and delay of trial

27 and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Rule

28 23(e)(1) (noting the types of information that should be provided to the court deciding whether to

grant preliminary approval includes, among other things:  (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation").  Given the significant risks of litigation coupled with the delays associated with continued litigation, including the possibility that the vast majority of class members may be subject to arbitration, the court is persuaded that the settlement benefits to the class fall within the range of reasonableness.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (holding that "the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); Rodriguez, 563 F.3d at 964 (affirming settlement approval where the settlement represented 30% of the damages estimated by the class expert); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

## 2. **Release of Claims**.

The court must also consider whether the settlement contains an overly broad release of liability.  See Newberg, § 13:15 ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class).

Here, class members who do not exclude themselves from the settlement will release
any and all claims . . . of any and every kind that were alleged in the
Complaint, or that could have been asserted but were not alleged in the
Complaint or in any other court or forum, whether known or unknown, on the

1     basis of, connected with, arising out of, or related in whole or in part to any

2     or all of the alleged acts, omissions, facts, matters, transactions,

3     circumstances, and occurrences that were directly or indirectly alleged,

4     asserted, described, set forth, or referred to in the allegations of the

5     Complaint, whether such allegations were or could have been based on

6     contract; common law; equity; or on any statute, rule, regulation, order, or

7     law, whether federal, state, or local, including claims under federal or state

8     unfair competition or debt collection laws related to "pay-to-pay fees,"

9     payment processing fees or convenience fees assessed during the Class

10    Period[.]

11  (Dkt. 82-2, Exh. 1, Agreement at ¶ 17.1).  With the understanding that, under the release,

12  settlement class members are not giving up any claims unrelated to those asserted in this action,

13  the court finds that the release adequately balances fairness to absent class members and

14  recovery for the class with defendant's business interest in ending this litigation.  See Fraser, 2012

15  WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and

16  moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class

17  member[s]").

18        C.    The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the

19              Class Representative.

20        Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class

21  members equitably relative to each other."  The Ninth Circuit has "repeatedly held that reasonable

22  incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance

23  Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed

24  "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of

25  the class representatives."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir.

26  2013).  The court must examine whether there is a "significant disparity between the incentive

27  awards and the payments to the rest of the class members" such that it creates a conflict of

28  interest.  See id. at 1165.  "In deciding whether [an incentive] award is warranted, relevant factors

16

1   include the actions the plaintiff has taken to protect the interests of the class, the degree to which

2   the class has benefitted from those actions, and the amount of time and effort the plaintiff

3   expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

4          Here, the Agreement provides for a service payment of up to $10,000 for plaintiff. (See Dkt.

5   82-2, Exh. 1, Agreement at ¶ 6.7).  Although plaintiff appears to have been diligent and taken on

6   substantial responsibility in litigating this case, including sitting for his deposition, (see Dkt. 82-3,

7   Klare Decl. at ¶¶ 8-17), the court believes that a $10,000 service award is excessive.  Under the

8   circumstances here, the court tentatively finds that an incentive payment of no more than $5,000

9   is appropriate. See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding

10  an incentive award of $5,000 reasonable).

11         D.    Class Notice and Notification Procedures.

12         Upon settlement of a class action, "[t]he court must direct notice in a reasonable manner

13  to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule

14  23(c)(2) requires the "best notice that is practicable under the circumstances, including individual

15  notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements

16  for classes certified under Rule 23(b)(3)).

17         "The standard for the adequacy of a settlement notice in a class action under either the Due

18  Process Clause or the Federal Rules is measured by reasonableness." Fikes Wholesale, Inc. v.

19  HSBC Bank USA, N.A., 62 F.4th 704, 719 (2d Cir. 2023) (internal quotation marks omitted); Low

20  v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we

21  measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal

22  quotation marks omitted).  A class action settlement notice "is satisfactory if it generally describes

23  the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

24  and to come forward and be heard." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th

25  Cir. 2004) (internal quotation marks omitted); see also Gooch v. Life Invs. Ins. Co. of Am., 672

26  F.3d 402, 423 (6th Cir. 2012) (noting settlement notices "are sufficient if they inform the class

27  members of the nature of the pending action, the general terms of the settlement, that complete

28  and detailed information is available from the court files, [and] that any class member may appear

17

and be heard at the hearing[.]") (internal quotation marks omitted).  The notice should provide
sufficient information to allow class members to decide whether they should accept the benefits
of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement
but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001)
("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class
members of the terms of the proposed settlement and of their options.") (internal quotation marks
omitted).

Here, class members will receive direct notice via email or mail, (see Dkt. 82-2, Exh. 1,
Agreement at ¶ 9.1); (Dkt. 82-2, Exh. A1, Email Notice at ECF 45-47); (Dkt. 82-2, Exh. A2,
Postcard Notice at ECF 49-52), which will include a link to the settlement website and the
long-form website notice available therein.  (See Dkt. 82-2, Exh. A3, Class Notice ("Website
Notice")).  The Website Notice describes the nature of the action and the claims asserted in the
operative complaint.  (See id. at ECF 56); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides
the definition of the class, (see Dkt. 82-2, Exh. A3, Website Notice at ECF 56); see also Fed. R.
Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount,
the distribution of that amount, and the release, as well as the proposed attorney's fees and
expenses, and incentive payment.  (See Dkt. 82-2, Exh. A3, Website Notice at ECF 54, 56-57).
The Website Notice includes an explanation that lays out the class members' options under the
settlement:  they may remain in the class, object to the settlement but still remain in the class
(including by appearing through their own attorney), or exclude themselves from the settlement
and pursue their claims separately against defendant.  (See id. at ECF 54, 58); see also Fed. R.
Civ. P. 23(c)(2)(B)(iv)-(vi).  Finally, the Website Notice explains the procedures for objecting to the
settlement and provides information about the Final Approval Hearing.  (See Dkt. 82-2, Exh. A3,
Website Notice at ECF 58).

Based on the foregoing, the court finds there is no alternative method of distribution that
would be more practicable, or any more reasonably likely to notify the class members.  In addition,
the court finds that the procedure for providing notice and the content of the Class Notice
constitute the best practicable notice to class members and comply with the requirements of due

1   process.

2        E.      Summary.

3        The court's preliminary evaluation of the settlement does not disclose grounds to doubt its

4   fairness "such as unduly preferential treatment of class representatives or segments of the class,

5   inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys."

6   Manual for Complex Litig. § 21.632 at 321 (4th ed. 2023); see also Spann II, 314 F.R.D. at 323

7   (same).

8                                        **CONCLUSION**

9        Based on the foregoing, IT IS ORDERED THAT:

10       1.   Plaintiff's Renewed Unopposed Motion for Preliminary Approval of Class Action

11   Settlement **(Document No. 82)** is **granted** upon the terms and conditions set forth in this Order.

12       2.   The court preliminarily certifies the class, as defined in ¶ 4.1 of the Settlement

13   Agreement, (Dkt. 82-2, Exh. 1, Agreement), for the purposes of settlement.

14       3.   The court preliminarily appoints Michael Klare as class representative for settlement

15   purposes.

16       4.   The court preliminarily appoints Bailey & Glasser, LLP and Bibiyan Law Group, P.C.,

17   as class counsel for settlement purposes.

18       5.   The court preliminarily finds that the terms of the settlement are fair, reasonable and

19   adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

20       6.   The court approves the form, substance, and requirements of the proposed notice

21   program.  (See Dkt. 82-2, Exh. A1, Email Notice at ECF 45-47); (Dkt. 82-2, Exh. A2, Postcard

22   Notice at ECF 49-52); (Dkt. 82-2, Exh. A3, Website Notice at ECF 54-58).  The proposed manner

23   of notice of the settlement set forth in the Settlement Agreement constitutes the best notice

24   practicable under the circumstances and complies with the requirements of due process.

25       7.   The court appoints Simpluris as settlement administrator.  Simpluris shall complete

26   dissemination of class notice, in accordance with the proposed notice plan, no later than

27   **December 5, 2025**.

28       8.   Plaintiff shall file a motion for attorney's fees and costs, as well as any incentive

payment, no later than **January 2, 2026**, and notice it for hearing for the date of the final approval hearing set forth below.

9.    Any class member who wishes to:  (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement, must file his or her objection to the settlement or request exclusion no later than **February 3, 2026**, in accordance with the Website Notice and this Order.

10.    Plaintiff shall, no later than **March 12, 2026**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.    Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **March 19, 2026.**

12.    Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs, or incentive awards, shall, no later than **April 2, 2026**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.    A final approval (fairness) hearing is hereby set for **April 16, 2026**, at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement Agreement as well as the award of attorney's fees and costs to class counsel, and incentive award to the named plaintiff.

14.    All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 3rd day of November, 2025.

/s/
Fernando M. Olguin
United States District Judge